[Docket Nos. 40, 41, 42, 43, 44, and 45]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

ARELIA MARGARITA TAVERAS,

               Plaintiff,

     v.

RESORTS INTERNATIONAL HOTEL,
INC., et al.,

               Defendants.

Civil No. 07-4555 (RMB)

**OPINION**

APPEARANCES:

Arelia Margarita Taveras
7611 West 110TH Street
Bloomington, MN. 55438
(612) 232-2349
    Pro Se Plaintiff

James J. O'Hara, Esquire
John Maloney, Esquire
Loren L. Speziale, Esquire
Graham, Curtin & Sheridan
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07962-1991
(973)292-1700
    Attorneys for Defendants Resorts International Hotel,
    Inc./d.b.a. Resorts Hotel and Casino, Sun International
    Hotels Limited, Colony Capital, LLC f/k/a Colony Capital,
    Inc., Bob Benz, and Elizabeth D'Andrea

Eric G. Fikry, Esquire
Stephen David Schrier, Esquire
Blank Rome LLP
Woodland Falls Corporate Park
210 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002
(856) 779-3695
    Attorneys for Defendants Trump Plaza Hotel and Casino,
    Trump Plaza Associates, LLC, and Trump Taj Mahal Associates,

LLC/d.b.a. Trump Taj Mahal Casino Resort

Amy E. Rudley, Esquire
Russell L. Lichtenstein, Esquire
Cooper, Levenson, April, Niedelman & Wagenheim, PA
1125 Atlantic Avenue, Third Floor
Atlantic City, New Jersey 08401-4891
(609) 344-3161
    Attorney for Defendant Bally's Park Place, Inc./d.b.a.
    Bally's Atlantic City and Atlantic City Showboat,
    Inc./d.b.a. Showboat Casino Hotel and Harrah's
    Entertainment, Inc.

**BUMB**, United States District Judge:

**I.   INTRODUCTION**

    This matter comes before the Court upon the defendants' motions to dismiss plaintiff's Amended Complaint for failure to state a claim upon which relief may be granted, for insufficient service of process, and for failure to plead a short and plain statement of the claims showing entitlement to relief.  The Defendants are Bally's Park Place, Atlantic City Showboat, Harrah's Entertainment, Inc., Colony Capital, LLC, Sun International Hotels Limited, Trump Plaza Associates, LLC, Trump Taj Mahal Associates, LLC, Resorts International Hotel, Inc., Bob Benz, and Elizabeth D'Andrea, (the "Defendants"), all casinos, casino owners, and/or casino employees.  Plaintiff Arelia Margarita Taveras ("Plaintiff") patronized Defendant-casinos during a 14-month period in 2004 and 2005.

    Plaintiff alleges the Defendants facilitated Plaintiff's gambling addiction and induced her to gamble away money belonging to her and others, causing her loss of money, emotional injury,

and damage to reputation.  Plaintiff, who is a former attorney, also alleges the Defendants' conduct caused her disbarment. Specifically, Plaintiff alleges, Defendants breached their common-law duty of care to her, breached contractual obligations owed to her, conspired against her in violation of federal racketeering laws, and failed to report her casino transactions as required by federal law.

Defendants now move: (a) pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Amended Complaint for failure to state a legally cognizable claim; (b) pursuant to Rules 12(b)(2), 12(b)(4), and 12(b)(5), to dismiss the Amended Complaint for defective service of process; and (c) pursuant to Rule 8(a), to dismiss the Amended Complaint for failure to plead a "short and plain statement of the claim showing that the pleader is entitled to relief."  For the reasons set forth below, the Court grants Defendants' motions to dismiss for failure to state a claim and for defective service, and thus denies the Rule 8(a) motion as moot.

## II.  FACTS

Plaintiff Arelia Margarita Taveras, formerly an attorney in New York, gambled recreationally at various casinos between 2000 and 2004.[1]  She contends that her "gambling went from

---

[1] These facts, derived from the Amended Complaint and Plaintiff's Opposition Brief, are set forth in the light most

recreational to compulsive during the latter part of 2004 and the year of 2005." (Amd. Comp. § 47.) In that time, she gambled at a number of different casinos. (Amd. Comp. §§ 55, 48, 51, 53-54, 60, 62, 67-68, 107-109.) Plaintiff's compulsive gambling, manifest over a 14-month period, resulted in substantial financial losses. As a result of Plaintiff's gambling addiction, she neglected her professional duties and gambled away client funds. (Amd. Comp. § 66.) She was subsequently disbarred.[2] (Amd. Comp. § 78.)

On numerous occasions, Plaintiff's behavior during that period consisted of "consecutive days of gambling, without eating or sleeping . . . ." (Amd. Comp. §§ 112, 147, 150.) Plaintiff alleges that certain casino employees "refused to permit [her] family members from taking her home," (Amd. Comp. § 114.), and continued to allow her to gamble in spite of clear indications that she was a compulsive gambler, confirmed by information about her condition provided to casino employees by her brother. (Amd.

―――――――――――――

favorable to Plaintiff. The Amended Complaint distinguishes between Plaintiff's experiences at the various Defendant-casinos. These distinctions are immaterial for the purposes of the motions at hand, however.

[2] Plaintiff's disbarment is a matter of public record. <u>See In re Taveras</u>, 42 A.D.3d 258 (N.Y. App. Div. 2007). On June 12, 2007, Plaintiff was disbarred without opposition for "engaging in a pattern and practice of converting escrow funds entrusted to her as a fiduciary, knowingly providing altered and falsified records of her attorney escrow account to the Grievance Committee, improperly commingling personal and fiduciary funds, improperly drawing an escrow check to cash, and failing to maintain required records for her IOLA account . . . ." <u>Id.</u>

Comp. §§ 152-53.)  At the height of her addiction, Plaintiff was gambling five days per week and losing an average of $5,000 per hour.  (Amd. Comp. § 73.)  In a weekend of continuous gambling, Plaintiff lost $150,000.  (Amd. Comp. § 76.)

During this period, Plaintiff alleges, she received numerous "enticements" from Defendant-casinos, including casino event promotions, gambling tournament invitations, promotions for free televisions, as well as free limousine rides, hotel rooms, food, entertainment, and gift coupons.  (Amd Comp. §§ 137, 157, 159, 168-69.)

Plaintiff was hospitalized twice for "serious mental and physical ailments," (Amd. Comp. § 79.), and ultimately underwent in-patient treatment for her gambling addiction at a facility in Minnesota for nine months. (Amd. Comp. §§ 80, 81.)  She filed this action against Defendant casinos, casino owners, and casino employees, on September 20, 2007 for relief in the amount of $20,000,000.

On February 29, 2008, in response to Defendant MGM Hotel, LLC's motion to dismiss for inadequate service of process, this Court allowed Plaintiff an extra 45 days to properly serve Defendant MGM Hotel, LLC, denying without prejudice said Defendant's motion to dismiss.  The same day, in response to Defendants' motion to dismiss for failure to plead a "short and plain statement of the claim showing that the pleader is entitled

to relief" as required by Federal Rule of Civil Procedure 8(a),
this Court dismissed Plaintiff's Complaint without prejudice as
to all Defendants except Resorts International Hotel, Bob Benz,
and MGM Grand Hotel and Casino, allowing Plaintiff to file an
amended complaint in compliance with Rule 8(a) within 45 days.
Plaintiff so filed on April 14, 2008.

Defendants Bally's Park Place, Inc., Atlantic City Showboat,
and Harrah's Entertainment, Inc. have moved to dismiss the
Amended Complaint for defective service of process.  [Docket No.
40.]

Defendants Colony Capital, LLC f/k/a Colony Capital, Inc.,
and Sun International Hotels Limited have moved to dismiss the
Amended Complaint for failure to plead a "short and plain
statement of the claim showing that the pleader is entitled to
relief" as required by Federal Rule of Civil Procedure 8(a).
[Docket No. 43.]

All Defendants have filed motions to dismiss the Amended
Complaint for failure to state a claim upon which relief may be
granted pursuant to Federal Rule of Civil Procedure 12(b)(6).
[Docket Nos. 41, 42, 44, and 45.]


**III. STANDARD OF REVIEW**

A Rule 12(b)(6) motion to dismiss for failure to state a
claim upon which relief may be granted must be denied if the
plaintiff's factual allegations are "enough to raise a right to

6

relief above the speculative level, on the assumption that all the allegations in the complaint are true, (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)(internal citations omitted).  Moreover, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations omitted).

A district court must accept any and all reasonable inferences derived from those facts.  Unger v. Nat'l Residents Matching Program, 928 F.2d 1392 (3d Cir. 1991); Glenside West Corp. v. Exxon Co., U.S.A., 761 F. Supp. 1100, 1107 (D.N.J. 1991); Gutman v. Howard Sav. Bank, 748 F. Supp. 254, 260 (D.N.J. 1990).  Further, the court must view all allegations in the Complaint in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Therefore, in deciding a motion to dismiss, a court should look to the face of the complaint and decide whether, taking all the allegations of fact as true and construing them in a light most favorable to the nonmovant, plaintiff has alleged "enough facts to state a claim for relief that is plausible on its face." Twombly, 127 S. Ct. at 1974.  Only the allegations in the

7

complaint, matters of public record, orders, and exhibits attached to the complaint matter, are taken into consideration. <u>Chester County Intermediate Unit v. Pennsylvania Blue Shield</u>, 896 F.2d 808, 812 (3d Cir. 1990).


**IV.   DISCUSSION**

Plaintiff's Amended Complaint purports to plead twelve causes of action, however it raises essentially only three categories of claims: claims sounding in tort (Negligence (Count II), Intentional and Reckless Disregard for Plaintiff's Safety (Count III), Breach of Common Law Duty of Care (Count IV); Strict Liability (Count V), Respondeat Superior (Count VI), Negligent and Intentional Infliction of Emotional Distress (Counts XI and XII)); claims deriving from contract (Breach of the Implied Covenant of Good Faith and Fair Dealing (Count VII) and Unjust Enrichment (Count VIII)); and allegations of statutory and regulatory violations (The Federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968 (Count I); the Bank Secrecy Act, 31 U.S.C. §§ 5311-32 (Count IX); and, IRS regulations regarding the obligation to report cash transactions in excess of $10,000 (Count X)).


**A.   Tort Claims**

**1. Negligence**

Most of the allegations in the Amended Complaint amount to variations of a simple negligence claim.  Counts II, III, IV, V, VI, and XII all rely on Plaintiff's assertion that Defendants owed a common-law duty to her, which, she alleges, they breached.

For a complaint alleging negligence to survive a motion to dismiss, the Court must find as a matter of law that Defendants owed Plaintiff a duty.  GNOC Corp. v. Aboud, 715 F. Supp. 644, 652 (D.N.J. 1989).  To determine whether a duty was owed, the Court must apply the substantive law of the State of New Jersey. Id.  Where, as here, the New Jersey Supreme Court has not squarely addressed the critical issue at bar, the federal court "must be governed by a prediction of how the state's highest court would decide were it confronted with the problem."  McKenna v. Ortho Pharmaceutical Corp., 622 F.2d 657, 661 (3d Cir. 1980).

Plaintiff offers a number of different accounts for why Defendants have a duty to identify and exclude compulsive gamblers from their casinos.  She first asserts that Defendants owed her "a general duty to exercise reasonable care in the operation of its (sic) casino and gaming activities."  (Amd. Comp. § 271.)  She also claims that "Defendants were under a duty to use reasonable care under all attendant circumstances to make the premises safe for invitees . . . ."[3]  (Amd. Comp. §§ 272-74.)

---

[3] Plaintiff's papers correctly note that land-occupiers have a heightened duty of care to their invitees.  (Pl. Resp. Br. at 15.)  However, this heightened duty applies only to dangerous conditions on the premises, not the potentially hazardous conduct

Plaintiff is correct inasmuch as land-occupiers in Defendants' position "must refrain from conduct that is foreseeably and unreasonably dangerous to [their] invitee[s]."  5 <u>Harper, James, & Gray on Torts</u>, § 27.1, at 145 (2008).  However, Plaintiff's argument assumes that her continued gambling was an unreasonable danger foreseeable to Defendants.

Plaintiff does not point to any authority in support of this strained understanding of casinos' common-law duties.  In fact, the great weight of authority supports Defendants' position that common-law tort principles do not require casinos to rescue compulsive gamblers from themselves.  <u>See, e.g.</u>, <u>Hakimoglu v. Trump Taj Mahal Assoc.</u>, 70 F.3d 291, 293-94 (3d Cir. 1995); <u>Rahmani v. Resorts Int'l Hotel, Inc.</u>, 20 F. Supp 2d 932, 937 (E.D. Va. 1998); <u>Merrill v. Trump Indiana, Inc.</u>, slip op., 2002

---

of the land-occupier.  As to their conduct, businesses have the same duty to act with reasonable prudence toward their invitees as everyone else.  <u>See</u> 5 <u>Harper, James, & Gray on Torts</u>, § 27.1, at 145 (2008).  However, even if Plaintiff were entitled to the heightened duty imposed for conditions on the premises, as she suggests, Defendants would satisfy their duty merely by warning casino-patrons of the hazards associated with gambling.  <u>See</u> <u>Restatement (Second) of Torts</u> § 343(A) cmt. e ("[A]n invitee who enters land is entitled to nothing more than knowledge of the conditions and dangers he will encounter if he comes.  If he knows the actual conditions, and the activities carried on, and the dangers involved in either, he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk by entering or remaining on the land.  The possessor of the land may reasonably assume that he will protect himself by the exercise of ordinary care . . . .").

WL 1307304, *5 (N.D. Ind. May 9, 2002).[4]

The strongest argument against the existence of a casino's duty to restrain compulsive gamblers is the State's deliberate decision not to impose such a duty. "[S]tatutory and administrative controls over casino operations . . . are extraordinary[,] pervasive and intensive . . . . [State law regulates] virtually every facet of casino gambling and its potential impact upon the public. The regulatory scheme is both comprehensive and minutely elaborate." Knight v. City of Margate, 86 N.J. 374, 381, 431 A.2d 833 (1981). Yet, in spite of the "extraordinary[,] pervasive and intensive" regulations over "virtually every facet of casino gambling," id., the State's policymakers have notably declined to impose the duty upon which Plaintiff relies here.

In Tose v. Greate Bay Hotel & Casino Inc., 819 F. Supp. 1312, 1319 (D.N.J. 1993) and Hakimoglu v. Trump Taj Mahal Assoc., 876 F. Supp. 625 (D.N.J. 1994) aff'd 70 F.3d 291 (3rd Cir. 1995), this Court similarly noted the conspicuous refusal of state law to impose such duties in light of the State's vast regulatory scheme. Again today, the Court declines Plaintiff's invitation to impose a public policy on the State that the State itself has

---

[4] One notable and well reasoned opinion issued by this Court could be read to provide support for Plaintiff's argument. See GNOC Corp. v. Aboud, 715 F. Supp. 644, 651-56 (D.N.J. 1989). This view was expressly abrogated by the Third Circuit in Hakimoglu, however. 70 F.3d at 293.

disclaimed.[5]

Plaintiff asks this Court to adopt an extreme position, which departs radically from the New Jersey courts' formulation of the common-law duty of care.  Plaintiff requests that the Court innovate a new doctrine akin to dram-shop liability in which casinos would have a duty to identify and exclude gamblers exhibiting compulsive tendencies.  In Hakimoglu, the Third Circuit declined to expand dram-shop liability to make casinos responsible for the gambling losses of intoxicated patrons.  70 F.3d at 293-94.  Here, Plaintiff asks the Court to go even further, imposing upon casinos a duty to stop sober casino patrons who are gambling too much.  The Court is unwilling to do so.  Plaintiff's theory would, in effect, have no limit.  For example, if adopted by this Court, her theory would impose a duty on shopping malls and credit-card companies to identify and exclude compulsive shoppers.[6]  This Court will not sacrifice common sense and stretch the common-law duty of care as Plaintiff urges.

---

[5] Notably, while patrons may voluntarily place their names on lists of persons to be excluded from casinos, state law expressly absolves casinos from liability for failure to exclude these self-identified persons from gambling.  N.J.S.A. 5:12-71.2(c).

[6] "Uncontrolled buying, defined by the presence of repetitive impulsive and excessive buying that leads to personal and familial distress, is a psychiatric disorder . . . ."  M. Lejoyeux, et al., Phenomenology and Psychopathology of Uncontrolled Buying, 153 Am. J. Psychiatry 1524 (1996).

In addition to her simple negligence claims, Plaintiff asserts that Defendants are strictly liable for her injuries on a theory that gambling is an "abnormally dangerous activity." (Amd. Comp. § 321.)  This argument has no merit.  The New Jersey Supreme Court has applied the analysis set out in Restatement (Second) of Torts § 520 in determining whether an activity is so "abnormally dangerous" that it is worthy of strict liability. N.J. Dept. of Environm'l Prot'n v. Ventron Corp., 94 N.J. 473, 491-92 468 A.2d 150 (1983).  Factors to be considered in this analysis include whether the activity's risk can be eliminated with the exercise of reasonable care, whether the activity is a matter of common usage, and whether the activity is inappropriate for its location.  Id.  Needless to say, gambling can indeed be a safe activity, gambling is common, and state-regulated casinos are not inappropriate locations for gambling.  Playing blackjack, roulette, or the slots bears no likeness to dumping toxic waste into environmentally sensitive areas, id. at 492-93, demolition of buildings in populated areas, Majestic Realty Assoc., Inc. v. Toti Contracting Co., 30 N.J. 425, 153 A.2d 321 (1959), and transportation of highly flammable substances, Biniek v. Exxon Mobil Corp., 358 N.J. Super. 587, 818 A.2d 330 (2002).  Strict liability is simply inappropriate.

## 2. Intentional Infliction of Emotional Distress

Plaintiff's only cause of action sounding in tort that does

not require a common-law duty of care is her claim of intentional infliction of emotional distress.  (Amd. Comp. Count XI, §§ 434-78.)  She asserts that it was foreseeable to Defendants that she would become addicted to gambling and that Defendants "intentionally caused [her] severe emotional distress by continuing to entice her into gaming activities."  (Amd. Comp. §§ 442-46).  This claim, too, is without merit.

"[T]o establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe."  <u>Buckley v. Trenton Saving Fund Soc.</u>, 111 N.J. 355, 366, 544 A.2d 857 (1988).  The conduct must be either intentional, meaning the defendant must intend to produce emotional distress, or reckless, meaning the defendant must act in deliberate disregard of a high degree of probability that emotional distress will follow.  <u>Id.</u>  In a conclusory fashion, the Amended Complaint asserts that Defendant "knew that its acts would cause severe emotional and mental distress if they continued to solicit the plaintiff . . . ."  (Amd. Comp. § 461.) Even if this brute assertion were sufficient, Plaintiff cannot establish "extreme and outrageous conduct" by the Defendants.

To establish "extreme and outrageous conduct," Plaintiff must show that the conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable

14

in a civilized community." <u>Buckley</u>, 11 N.J. at 366 (citing
Restatement (Second) of Torts, § 46 cmt. d (1965)).  Since "[t]he
severity of the emotional distress raises questions of both law
and fact[,] . . . the court decides whether as a matter of law
such emotional distress can be found, and the jury decides
whether it has in fact been proved." <u>Id.</u> at 367.

The Court holds that such "outrageous," "extreme,"
"atrocious," and "utterly intolerable" conduct cannot be found in
this case.  New Jersey law sets a high bar for establishing
extreme and outrageous conduct.  <u>See</u> <u>Fregara v. Jet Aviation
Business Jets</u>, 764 F.Supp. 940, 956 (D.N.J. 1991) ("[Under New
Jersey law,] the limited scope of the tort tolerates many kinds
of unjust, unfair and unkind conduct.") (quoting <u>Cautilli v.
G.A.F. Corp.</u>, 531 F.Supp. 71 (E.D. Pa. 1982) (applying New Jersey
law)).  In allowing, even encouraging, Plaintiff to continue
gambling, Defendants acted well within the bounds of the
community norms reflected in state law.  As a matter of law,
therefore, Plaintiff's Amended Complaint falls far short of the
high bar for claims of intentional infliction of emotional
distress.

Each of Plaintiff's claims sounding in tort -- Counts II,
III, IV, V, VI, XI, and XII of the Amended Complaint -- therefore
fail to state a claim upon which relief may be granted.


**B.   Contract Claims**

15

Plaintiff asserts two causes of action based in contract: breach of the implied covenant of good faith and fair dealing (Count VII) and unjust enrichment (Count VIII).  Plaintiff asserts in her brief[7] that she had a contract with Defendant-casinos, because she "sign[ed] a form for their various card programs which offers players 'comps' and player incentives based on gaming activity . . . ."  (Pl. Resp. Br. at 25.)  However, this Court has previously rejected the concept of a gambling contract.  See Hakimoglu, 876 F. Supp. at 633 n.7.[8]  Moreover, signing a form does not necessarily create a contract; and even if it did, Plaintiff does not specify what terms of this alleged contract Defendants breached.

---

[7] Plaintiff did not seek leave to amend her Amended Complaint to add a breach-of-contract theory.  She may not amend a complaint through her briefs to the Court.  See Bell v. City of Philadelphia, slip op., 2008 WL 1813163 at *2 (3d Cir. 2008) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.") (internal quotations omitted); Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988). The Court nonetheless addresses this claim.

[8] This Court has opined that the gambling relationship may not be contractual, since "[t]he patron does not negotiate the terms of his relationship with the casino, nor can the patron or casino vary the rules of the game, the odds, or the payoffs, as those are established in New Jersey by the Casino Control Commission.  In short, in the so-called gambling 'contract' there is no mutuality."  Hakimoglu, 876 F. Supp. at 633 n.7.  See also Tose, 819 F. Supp at 1316 n.8 ("[B]ecause every aspect of the relationship between the gambler and the casino is minutely regulated by the state and there is little freedom of contract in the usual sense, there seems to be at least significant doubt that the New Jersey Supreme Court would recognize obligations not specifically called for by the statute or regulations.").

16

In short, Plaintiff's causes of action for breach of the
implied covenant of good faith and fair dealing and for unjust
enrichment fail to state a cognizable claim.  There is no
"generalized duty to act in good faith toward others in social
intercourse," Joseph M. Perillo, Calamari and Perillo on
Contracts 474 (2003), nor has Plaintiff pled an equitable
contract substitute, like promissory estoppel or quasi-contract.
Similarly, "unjust enrichment" is not a stand-alone claim; it is
a doctrine measuring restitution recovery in quasi-contract.
Perillo, supra, at 622.  Even if she had pled a quasi-contract
claim, it would not state a legally cognizable claim.  Plaintiff
clearly received the benefit of her relationship with Defendant
casinos: she spent money on the bona fide chance that she might
win more money.  In short, she gambled.  The mere fact that
Defendants profited from her misfortune, while lamentable, does
not establish a cognizable claim in the law.  "[S]ituations
exist where one's sense of justice would urge that unjust
enrichment has occurred, yet no relief is available."  Id.
Although Plaintiff may feel wronged by Defendant-casinos, unjust
enrichment and a lack of good-faith are not available to her as
avenues for relief.


   C.   **Statutory / Regulatory Claims**

        1.   **RICO Act**

Plaintiff alleges that Defendants "engaged in a pattern of racketeering activity" in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68. (Amd. Comp. Count 1, §§ 230-267).  She claims that Defendants used advertisements and solicitations, sent by mail to her home and business, to mislead her into thinking that gambling "would result in high returns and rewards."  (Amd. Comp. §§ 236-37.)

To establish a RICO claim, one must plead predicate criminal acts that constitute a threat of continuing racketeering activity.  <u>H.J. Inc. v. Northwestern Bell Telephone Co.</u>, 492 U.S. 229, 240 (1989).  "Where the alleged predicate acts involve mail and wire fraud, the allegations must meet the rigorous pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure."  <u>Bologna v. Allstate Ins. Co.</u>, 138 F. Supp. 2d 310, 321 (E.D.N.Y. 2001) (internal citations omitted).  "To specify acts of alleged wire and mail fraud with the necessary particularity, the complaint should contain evidence of the content, time, place, and speaker of each alleged mailing or wire transmission.  In addition, mail and wire fraud claims must set forth (1) the existence of a scheme to defraud; (2) the defendant's knowledge or intentional participation in the scheme; and (3) the use of interstate mails or wires to further the fraudulent scheme."  <u>Id.</u>

Plaintiff's Amended Complaint falls far short of this minimum standard.  In fact, in the Amended Complaint's 37

18

paragraphs setting out its RICO claim, Plaintiff fails to identify with particularity (by quoting, for example) even a single falsehood or misleading statement sent through the mail by a particular Defendant.  Plaintiff nonetheless argues that her RICO claim should be subject to the fact-finding inquiry of a trial.  The requirement that plaintiffs plead the predicate fraudulent acts with particularity, however, exists to protect defendants from defending against spurious charges.  <u>Seville Indus. Mach. Corp. v. Southmost Mach. Corp.</u>, 742 F.2d 786, 791 (3d Cir. 1984).

Failure to plead fraud with particularity in a RICO claim is a proper basis for dismissal of the claim.  <u>Lum v. Bank of America</u>, 361 F.3d 217, 227 (3d Cir. 2004).  The Court therefore need not reach the question of whether Plaintiff has adequately pled a racketeering "enterprise" under the statute.  The Court dismisses Plaintiff's RICO claim for failure to plead the predicate criminal act of mail fraud with particularity.

### 2.  Other Federal Regulatory Claims

Finally, causes of action IX and X in Plaintiff's Amended Complaint allege that Defendants failed to report certain gaming activities as required by 26 U.S.C. § 60501, 31 C.F.R. § 103 and the Bank Secrecy Act (31 U.S.C. §§ 5311-32).  Plaintiff alleges that Defendants' failure to report her high-stakes gambling activity precluded state and federal authorities from interceding

to curb her behavior.  (Amd. Comp. §§ 410-12, 425-29.)  Setting
aside this Court's doubts as to whether Plaintiff has standing to
bring such a claim,[9] she has no private right of action under
these statutes.  See James v. Heritage Valley Fed. Credit Union,
197 Fed. Appx. 102, 106 (3d Cir. 2006) (declining to recognize a
private right of action in the Bank Secrecy Act); Deleu v.
Scaife, 775 F. Supp. 712, 716-17 (S.D.N.Y. 1991) (declining to
recognize a private right of action for tax code violations).
Plaintiff therefore cannot state a claim upon which relief may be
granted under these statutes and regulations.


**D.   Defective Service of Process**

On February 29, 2008, this Court admonished Plaintiff for
failure to properly serve Defendant MGM Grand Hotel, LLC with
process; this Court exercised its discretion in not dismissing
Plaintiff's claim for lack of proper service; and this Court
ordered Plaintiff properly to effect service under pain of
dismissal.  [Docket Nos. 21-22.]  At that time, mindful that
Plaintiff was acting pro se, the Court gave Plaintiff the benefit
of the doubt that "good cause" existed for granting an extension
of time to effectuate proper service, since there was no reason
to doubt Plaintiff's good-faith efforts to comply with the rules

---

[9] To establish standing, Plaintiff must show that she
experienced a non-speculative injury as a direct result of
Defendants' failure to report her gaming activities.  See Lujan
v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

for proper service.  See Petrucelli v. Bohringer & Ratzinger, 46
F.3d 1298, 1305-06 (3d Cir. 1995) (holding that the Court should
determine whether good cause exists for granting an extension of
time to effectuate proper service before dismissing a suit); MCI
Telecoms. Corp. v. Teleconcepts, 71 F.3d 1086, 1097 (3d Cir.
1995) (holding that good cause exists where there is a
"demonstration of good faith").

    The Court does not extend the same courtesy to Plaintiff
today.  Defendants Bally's Park Place, Inc., Atlantic City
Showboat, and Harrah's Entertainment, Inc. have moved for
dismissal of Plaintiff's claims against them for insufficient
process and insufficient service of process pursuant to Federal
Rule of Civil Procedure 12(b)(2), 12(b)(4), and 12(b)(5) [Docket
No. 40].  Again in a conclusory fashion, Plaintiff asserts that
she did effectuate proper service on all Defendants, but
nonetheless requests an extension to properly serve any
Defendants claiming deficient service of process.  (Pl. Resp. Br.
at 37.)  In light of this Court's Opinion and Order of Feburary
29, 2008, the Court denies that "good cause" exists for granting
Plaintiff's request.

    "Where service upon a defendant was improper, a plaintiff's
Complaint must be dismissed without prejudice for lack of
personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  Proper
service is a prerequisite to personal jurisdiction." Millennium,
L.P. v. AutoData Sys., slip op., 2006 U.S. Dist. LEXIS 16329

(D.N.J. 2006); see also Ayres v. Jacobs & Crumplar, P.A., 99 F.3d 565, 569 (3d Cir. 1996).  Additionally, under Fed. R. Civ. P. 12(b)(5), a Complaint may be dismissed for insufficiency of service of process.  See, e.g., In re Bulk [Extruded] Graphite Products Antitrust Litigation, slip op., 2006 U.S. Dist. LEXIS 45762 (D.N.J. 2006).  Accordingly, the Court dismisses without prejudice Plaintiff's claims against Defendant Ballys for lack of personal jurisdiction.

### E. FAILURE TO PLEAD A SHORT AND PLAIN STATEMENT OF THE CLAIM

The Court need not reach the motion of Defendants Colony Capital, LLC f/k/a Colony Capital, Inc., and Sun International Hotels Limited to dismiss the Amended Complaint for failure to plead a short and plain statement of the claim showing entitlement to relief pursuant to Rule 8(a), since dismissal of all claims under Rule 12(b)(6) renders moot the motion for improper pleading.

### V. CONCLUSION

For the aforementioned reasons, Defendants' motion to dismiss the Amended Complaint is granted.  An appropriate Order will issue this date.

22

Dated: September 19, 2008    s/Renée Marie Bumb
                                     RENÉE MARIE BUMB
                                     UNITED STATES DISTRICT JUDGE